May it please the Court, I am David Lombardi. I represent Plaintiff American Independence Mines & Minerals Co. This appeal arises from government action based on a misleading, incomplete environmental impact statement, no action alternative. That no action alternative falsely listed hundreds of miles of existing roads that were actually being used by plaintiff and others as administratively closed. The omission of these existing roads excluded them from the government's assessment of existing conditions for purposes of the alternatives analysis. If that government action, which is based on admitted and undisputedly false facts is permitted to go unchallenged, it will undermine the very integrity of the NEPA decision-making process. For the convenience of the Court, there are at least two specific areas in the record where the government acknowledges the use of the wrong map and misdirection concerning the roads that were subject to the no action alternative. These are in the record of decision in the SER, page 20, and in the appeal decision, the excerpts of record, page 58. The district court's decision to dismiss plaintiff's challenge for a purported lack of prudential standing is erroneous and should be reversed for no less than three reasons. First, prudential standing exists based on plaintiff's undisputed economic interests. Unlike this Court's decision in Ashley Creek, which held that Article III standing was lacking, where there was only a purely economic interest and no geographic nexus, plaintiffs here have both uncontested economic interests and a close geographic connection to the land at issue. That is sufficient, we contend, to establish prudential standing under the Eighth Circuit's decision in Friends of the Boundary Waters, which is squarely on point here, as we explain in our briefing on page 25 of our opening brief and pages 16 through 19 of our reply brief. To the extent that language in the Ashley Creek decision appears to foreclose prudential standing based on economic interests, and to the extent that it criticizes the Eighth Circuit's decision in Friends of the Boundary Waters Wilderness, the Ashley Creek language was not necessary to the decision in that case. Judge Beezer noted it should be reserved for another time. We submit to this panel that it is not binding and may be treated as dicta. In this case, the specific statutory provision under which the statute is due to see. Subsection 4 of that provision creates a zone of interest concerning a relationship that includes economic impacts. Even though the overall purpose of NEPA is to declare a national commitment to protecting and promoting environmental quality, there is no clear expression that it also intended to silence the consideration of economic interests. In fact, consideration of economic interests is required by NEPA section to protect the environment. NEPA's zone of interest is to protect the environment by mandating a process that requires responsible viewpoints to be included in the final environmental impact statement. In California v. Block, this Court noted that the paramount congressional desire by virtue of the process created by NEPA is to internalize and to obtain opposing viewpoints. Those opposing viewpoints after the decision has been made that an environmental impact statement is required are directed by NEPA section 1022C sub 4 to include economic interests. Secondly, and thirdly, plaintiff's complaint sufficiently alleged intertwined environmental and economic interests that establish prudential standing and require reversal. The district court acknowledged plaintiff's environmental interests, acknowledged plaintiff's participation in environmental studies and assessment, but refused to accept them as intertwined, under the Ashley case, with plaintiff's undisputed economic interests. Where did the district court acknowledge your environmental interest? Your client's environmental interest, I should say. The district court mentions on excerpts of record 83 and 84, plaintiffs state that they are engaged in environmental and geophysical studies and environmental assessment activities. Plaintiffs also admit, however, that the studies are completed in pursuit of mineral resource development activities. And then the court goes too far. That is, plaintiffs would never have engaged in environmental assessment unless it also furthered their economic interest. The court also makes similar statements on ER 146 through 147 and on excerpts of record 149. Counsel, isn't there a distinction there? It seems to me the district court's acknowledging that your client has engaged in some environment, what I'll call environmental activities or studies, but isn't the district court really finding that those were in the furtherance of an economic interest? The district court is excluding consideration of those environmental activities as having, representing any interest, because it concludes that, well, they're all motivated by economic interest and so they don't count. Now, first of all, there's nothing in Ashley Creek that says that the economic interests have to be all pro-environmental and have to be intertwined. It simply says that there have to be intertwined interests. The law also recognizes that the economic interest may be primary. And the fact of a primary economic interest is even acknowledged by the government in this case as not entirely disqualifying. Is there any place in the record where your client argued that your use of the roads is actually good for the forest, such as, for example, I mean, I'm making this up, but I can imagine uses of roads that are good for forests and entirely consistent with protecting the environment, such as we need roads in order to be able to access to the forest to fight fires or, you know, something along those lines? Is there anything like that in the record? Yes. Yes, there are, Judge Goodwin. I can't give you the specific citation to the record, except that the comment letters that were submitted by American Independence did talk about roads for the use for fire access. One of the other things that we're going to be able to find in the record is that the They are contained in this record as well. I'm trying to figure out what the district court had. And the reason they're included here is because they were attached to the complaint. The letter that I saw that was attached to the complaint talked about, what do you call them, water bridges or water, you know, the cuts? Water bars. Water bars. Yes. Thank you. I saw that reference, and it's in a footnote in your brief as well. But I'm now, I didn't see a reference to the need to maintain these roads to fight fires. So I'll go back and look for that again. There's an assertion in your reply brief that once the roads were delisted, then they wouldn't be maintained. But I couldn't see a place in the record where that was argued or evidence that that was established at the district court level. One of the things that was submitted to the district court was a report from a road engineer or soil specialist by the name of Jeff Barrett. And Mr. Barrett's report is contained in the supplemental excerpt of record, page 222. And one of the things that is significant about that report is Mr. Barrett's conclusions that forest roads are not uniform in design, construction, condition, proximity to streams, soils permeability, maintenance, and other aspects, so that information concerning the existence, location, level of use, and proximity to streams for every road is essential to the assessment of the environmental impact of changing road use. But none of that individual assessment took place because of the misstatements of fact and omissions that resulted from the falsely stated or misstated no action alternatives. These misstatements and omissions actually make it impossible at the early pleading stage in the litigation to specify specific harm to the environment resulting from the government's violation because less than a full set of the existing condition was described. By the same token, it makes it impossible for the government to assert that it took the hard look it's required to do or made the fully informed decision required by NEPA because it didn't have full information either. Of course, none of this is necessary if this court adopts the analysis of Friends of the Boundary Waters and concludes that economic interests themselves are sufficient to establish prudential standing. We also have asserted a theory regarding meaningful comment, the thrust of which is that the environment is served and everyone in the process is served by having the ability to make meaningful comment and for the agency to receive meaningful comment. That is expressed in our briefs on page 17 through 24 of Plaintiff's Opening Brief and 19 through 23 of Plaintiff's Reply Brief. I'll reserve the balance of my time if I may. Thank you. Very well. Good morning, Your Honors. Nicholas D'Amacio for the United States Forest Service, and may it please the Court. Before I address the arguments that AAMCO just the appellant just raised, I'd like to first briefly explain why the majority of those arguments are not properly before this Court due to AAMCO's late-filed notice of appeal. And in the process of addressing that argument, I'll address Judge Kristen's question about where AAMCO ever alleged that the agency's decision to not to designate more roads in this forest for motor vehicle use somehow benefits the environment. I'll then move on to address why AAMCO lacks prudential standing to sue under NEPA, assuming that this Court concludes that it needs to reach that question. Due to the lateness of AAMCO's notice of appeal, all that is properly before this Court is the district court's decision to deny its motion for reconsideration. And so we would urge, Your Honors, to rule simply that the district court did not abuse its discretion in denying AAMCO's motion for reconsideration, because such a motion can't be used simply to re-argue your case or to raise new arguments that were previously available to you during the primary briefing. So what happened here is that rather than filing a notice of appeal from the district court's order granting our motion to dismiss, AAMCO filed a motion for reconsideration under Federal Rule of Civil Procedure 59e. That motion was undisputedly one day late, and under this Court's case law, a late-filed motion does not toll the time to file a notice of appeal. So by the time AAMCO ultimately filed its notice of appeal, its time to do so had already run. And so under this Court's case law, this Court lacks jurisdiction to review the district court's underlying judgment. All this Court has the discretion to do is to construe the motion as a motion for reconsideration under Federal Rule of Civil Procedure 60b, and review the denial of that motion for an abuse of discretion. Now, as the AAMCO's motion for reconsideration, you can't use such a motion to re-argue your case or to raise new arguments that were previously available to you. The only proper basis for such a motion is where there are new facts or new law that were not previously available to you during the primary briefing, or where the district court's order contains a clear and manifest error of law or fact, such as, for example, where the district court relies on a completely wrong legal standard in reaching its decision. Now, with one exception, AAMCO's motion did not contain any such theory. As the district court ruled, it simply rehashed its arguments that the allegations in its complaint were sufficient, and it presented a brand-new theory that closing roads injures the environment because it increases sediment runoff into nearby streams. The district court correctly refused to consider that argument because AAMCO was raising it for the very first time in its motion for reconsideration, and that argument was previously available to AAMCO during briefing. Now, I said there was one exception. AAMCO did request the district court to remove from its decision the factual conclusion that AAMCO's use of the roads degrades the environment. The district court actually granted the motion on that ground and excised that finding of fact, and AAMCO now contends that the district court should have gone further somehow in that respect. But if you look at the motion for reconsideration and the portion of that motion that specifically describes the relief that AAMCO is seeking, that's its supplemental excerpt of Record 175. Well, we have precedent that we have construed a late-filed Rule 69e motion under Rule 60b. Is your argument, counsel, that if we construed under Rule 60b, they can't re-argue their whole underlying decision, the whole underlying decision? They're limited to the much narrower question? Yes, Your Honor. You're correct that there is precedent stating that you can construe a late-filed motion under Rule 60b, but our argument is that the grounds that the court would grant such a motion on are very narrow. They're where there are new facts or new law that were not previously available to you, or where there is a clear and manifest error of law that you bring to the court's order, and that none of those grounds were present in this case. It was not an abuse of discretion for the district court to deny this motion, because for the most part, all the motion did was simply re-argue the same arguments that they had presented in their original briefing, and then raise a brand-new argument that was previously available to them. Well, but it seems a little bit like semantics to me, going back to Judge Pregerson's question, because I'll grant you that if we construe this under 60b, there is a much higher standard, abuse of discretion standard, I think, that that's still the law. But apart from that, what they're arguing, what AMCO is arguing, I think, is that there was a real error, because the judge and the trial court judge acknowledged at least part of that by excising the one sentence you just identified, and that is this one that really sort of begs the whole question in this case. It becomes circular, I think, because their position is their interests aren't purely economic, that they have this intertwined other environmental purpose. Our position is that the Court applied the correct legal standard. It recognized what the relevant precedents were, Ashley Creek, the Rancher's Cattleman case, the Nevada Land Action case. It recited the proper legal standard. It applied that proper legal standard to the allegations in the complaint. And so AMCO did not present some clear and manifest error, such as in the International Fiber Com case, which is the one that AMCO is citing. That was a case where the district court applied the completely incorrect legal standard to decide the question. So that's our position. And as to this factual conclusion, all I would point out is that the district court granted the very relief that AMCO asked for on that issue. At Supplemental Excerpt of Record 175-176, AMCO specifically requests, and I quote, to remove from the Court's decision the conclusion that AMCO's use of these roads degrades the environment. It's awfully hard for AMCO to argue that the district court abused its discretion in granting the very relief that it asked for in its motion. So that's the the we think this case can be easily resolved by ruling that the district court did not abuse its discretion in denying AMCO's motion for reconsideration, because that is all that's properly before this Court. However, if this Court concludes that it needs to go further and address the AMCO's prudential standing under NEPA, our position is that it lacks prudential standing. Kennedy. Was the timeliness issue raised before the district court? Your Honor, this Court has held that the timeliness issue is an absolute requirement that there's no possibility of waiving that issue. It's a requirement that's built into the Federal Rules of Civil Procedure. I just ask you a question. Sure. Was that issue raised before the district court? No, Your Honor. There was no recognition in the district court that AMCO had filed an untimely motion. But under this Court's precedent in Feister, that issue is irrelevant. It's an absolute requirement, jurisdictional requirement. Turning to the zone of interest issue before this Court, AMCO lacks prudential standing to sue under NEPA because the only concrete injury, in fact, that it is alleged from the agency's decision in this case is the inability to drive on certain roads for mining purposes. And that injury is exclusively economic. So what the agency decided here was which roads in this particular forest would remain open to motor vehicle use. And to satisfy Article III's injury-in-fact requirement, AMCO alleged that it could no longer use certain roads in that forest to gain access to its mining claims. So to have prudential standing to sue under NEPA, what AMCO has to show is that injury, the injury that it alleged to satisfy Article III's injury-in-fact requirement. That injury has to fall within NEPA's zone of interest. And as this Court has repeatedly held, because NEPA is a statute whose every provision is directed at protecting the environment, a plaintiff has to allege an injury to the environment from the agency's decision in order to have standing to sue. AMCO's problem is that the injury that it alleged to satisfy the Article III injury-in-fact requirement, its inability to drive on certain roads to access its mining claims, is in no way also an injury to the environment from the agency's decision. There's nothing in AMCO's complaint that in any way explains how the agency's decision not to designate more roads for motor vehicle use within the forest somehow injures the environment. And so AMCO cannot meet the Ashley Creek standard of alleging an intertwined economic and environmental injury. Now, I'd like to pause at this point and just explain that, in fact, Ashley Creek is binding on this Court. AMCO alleges that the that ruling was not necessary to the to the Court's decision in that case. However, that case specifically explained that it was holding on two alternate bases, and an alternate basis is a binding ruling of the Court. There's case law on this. We didn't cite it in its brief because this was a rather surprising argument to have come up in the reply brief. Kagan. Kagan. I'd like to ask you to address a different argument that's a little more interesting to me. Roberts. Sure. And that is that, I don't mean to interrupt, but I think I understand your argument that that was part of Ashley Creek, period. That's part of the majority decision, with all respect. So what I'd like to know is, what is your response to the argument that counsel just made in response to my question about where did you allege that use of this road is good for the forest? And he mentioned an attachment that might have not just included the water bars, but the ability to fight forest fires. The only place where AMCO ever raised such an argument was in its motion to reconsider. That was the very first time, whether in the complaint, in the AMCO's comments before the agency, in AMCO's administrative appeal. That was the only place where AMCO ever alleged that somehow closing roads within the forest injures the environment. And the district court properly refused to consider that argument because it was being raised for the very first time in its motion for reconsideration. I would also point out, Your Honors, that AMCO did not challenge that aspect of the district court's ruling in its opening brief on appeal. And so for purposes of this appeal, it's also waived. Your Honor, you asked, was the --" were the comments before the district court. They're all attached to the complaint. So the complaint attached AMCO's comments in the administration. Kagan. But I read those. And I don't mean to interrupt you, but I didn't see this forest fire argument there. Did I miss it? Did it come now? It's going to come later. Now I'm hearing you say they only made the argument in the motion to reconsider. The fire suppression, the forest fire issue, is in the comments or its administrative appeal. I can't remember exactly which one. That ground also has not been asserted to the district court as a basis for their prudential standing. So it was before the district court or it wasn't. And I'm not trying to be difficult. It's just that it sounds like it was perhaps an attachment to something. Yes. But wasn't argued. I certainly didn't see it in the briefing. Or which is it? I want to be accurate. Okay. Two questions. First, was it before the district court? Yes, it was. In the ---- For the motion to reconsider? Not in the ---- it was not argued before the district court. But the documents themselves were in the record. All right. That clears that up. Thank you. The documents are attached. They follow the complaint in the excerpts of record. If they're the attachments to the complaint, then I'm ---- then you've answered my question. Okay. Because I've got those. Thank you. Sorry if I'm not being clear on that issue. You were very clear. Thank you. Right. So the point here is that the only place where AAMCO ever alleged or ever argued that somehow the agency's decision injured the environment was in its motion for reconsideration. District court properly refused to consider that argument because it was being raised and for the first time in a motion for reconsideration. AAMCO hasn't challenged that aspect of the district court's decision. I would also note AAMCO referred to some studies that were cited about within its administrative appeal. If you look at excerpt of record 157 to 158, this is the district court's ruling on the motion for reconsideration. The footnote on that page specifically notes that the studies that the plaintiff cited in its administrative appeal are not the studies that it's citing about the increased sediment runoff. Those studies were never provided to either the agency during the administrative process, nor were they raised before the district court during briefing on the merits. Have a look at that footnote on page one, excerpt of record 157 to 158. The study that was cited to the agency was about the impacts of using the roads from driving on the roads and their argument that that doesn't injure the environment. It wasn't an argument that closing the roads somehow injures the environment. And I'd like to bring it back around because there are multiple precedents on this issue. It's not just Ashley Creek. This Court is also bound by its decision in Rancher's Cattlemen, which was decided in the very same year as Ashley Creek. And that case explicitly says that in order to have standing to sue under NEPA, you have to allege an injury to the environment from the agency's decision. And the problem is nothing in the plaintiff's complaint alleges such an injury. They point to several paragraphs, and I'd like to discuss those paragraphs with you here. Paragraph 22 of the complaint says that they attempt to minimize the environmental impacts from their mining activities in the forest. The problem is that this Court has already held that merely alleging that you conduct your business in an environmentally friendly way is insufficient to sue under NEPA. That was this Court's decision in the Nevada Land Action case. And that case remains binding. It was cited by this Court again in Rancher's Cattlemen and again in Ashley Creek. So that disposes of paragraph 22 of the complaint. Paragraph 23 of the complaint says that they commissioned environmental studies in furtherance of their efforts to develop the mineral resources of the forest. Again, as the district court specifically pointed out in Excerpt of Record 116, that is simply an allegation about the way AAMCO conducts its business. It's not an allegation that somehow the agency's decision not to designate more roads in this forest injures the environment. Finally, they rely on paragraph 30 of their complaint, where they say that they were denied an ability to analyze the consequences of the agency's decision by alleged misstatements in the NEPA documentation. That this is their meaningful comment zone of interest argument. The problem with that argument is that it's essentially a summary of a procedural NEPA violation. The requirement to take comment and to do an adequate analysis of alternatives are procedural requirements of NEPA. And as the Supreme Court held in Summers and this Court held in City of Sausalito a plaintiff doesn't get standing to sue on the basis of a procedural violation alone. The plaintiff also has to allege a concrete injury in fact from the decision. And that concrete injury in fact has to fall within NEPA's zone of interest. The only concrete injury in fact that AAMCO has alleged in order to come in and sue under NEPA in this case is its inability to drive on certain roads to access its mining claims. That is not in any way an injury to the environment from the agency's decision. And so it lacks prudential standing to sue. Kennedy. Did I ask about the Valley County claim? Is that still pending? It is still pending, Your Honor. Is that part of this case? No, Your Honor. It isn't. That's preceded. This is the tail didn't follow the hide when this case was dismissed. The district court entered a final judgment in this case. The Valley County case proceeded as a separate action within. That's still going on. That's right. Where is it? What State is? Your Honor, I believe it's at the summary judgment stage. I'm not quite sure because I'm not the trial attorney on that case, but I believe it's proceeded to the summary judgment phase. I was just wondering whether we're going to get another appeal out of this case. You know, it's possible, but I think what we're talking about here today is whether or not AIMCO, the mining company, has prudential standing to sue under NEPA. That's a pretty straightforward question, and we can probably figure that out. I'm just wondering what else is going on over there. Sure. Your Honors, because we believe that this case can be easily resolved either by ruling that the district court did not abuse its discretion in denying AIMCO's motion for reconsideration, or by ruling that AIMCO lacks prudential standing under NEPA because the only concrete injury, in fact, that it's alleged is exclusively economic, I'm not going to address the additional arguments that we raised in our brief about mootness or ripeness. Unless Your Honors have any further questions, I'd just like to thank you for your time and attention. Thank you. Thank you. Thank you. Thank you. Thank you. It is also correct that the issue was not raised in the trial court, so that the motion was fully briefed and argued by all parties and decided by the court. Had, of course, the motion been opposed or objected to on the basis that it was late, there would at least have been the opportunity to ask the district court to rather than this court. It's important that the court, the district court, granted a portion of the Rule 59E, which we hope this court will treat as a 60B motion, and acknowledged that it had drawn improper factual conclusions. In fact, it had created factual conclusions that had no support in the complaint. In the motion for in the motion for relief, it's it's difficult to say, well, we just wanted to eliminate that one section from the court's decision, but didn't want the court to consider the implication of removing those factual conclusions from its decision, which is precisely what should have occurred, particularly under Rule 12B6. We're dealing with Rule 12B6 in terms of prudential standing and the adequacy or the sufficiency of the allegations in the complaint. The complaint was sufficient, as pleaded, to plead the general allegations, which were under which, under Rule 12B6 motion, the specific facts are presumed to exist. American Independence was very aware that it would face a challenge to its jurisdiction and believed it would face a challenge to its jurisdiction again by way of summary judgment. But at the pleading stage, the court construed the complaint in such a way that it concluded there was no injury, there was no environmental interest, and everything was motivated by purely ethical issues in violation of what the court thought was governed by Ashley Creek. I'll direct the Court's attention to Excerpt of Record V and to paragraph 30 of the Harm to the Environment, where it is alleged that the lack of an accurate assessment of the existing road network has denied AAMCO, the public, the Payette National Forest, which was the agency making the decision, and other agencies, which is a reference to the commenting agencies, the ability to properly and thoroughly analyze the environmental and ecological consequences and the interrelated social and economic consequences of the alteration of travel management procedures. The point simply being that you can't exclude half of the data that you need to determine what the existing condition is and then make a reasonable alternatives analysis, so that the environment is harmed by an ill-informed, inaccurate, misleading, no-action alternative. So there is no proof, no guarantee that the environment is actually served by the data that was used to make the decision. Now, the Court asked the Court asked for citations to the record where fire was mentioned. I'll direct the Court to page 41 from the Excerpts of Record, and page 52 from the Excerpts of Record, where this is attached to plaintiff's complaint and a mention is made concerning fire safety. I've read the attachments to the complaint, but I think I was trying to clarify, and I think opposing counsel clarified for me, his position is that this was never argued before the district court, if I'm understanding him correctly, that simply the attachments were included as attachments to the complaint, is that right? They were included as attachments to the complaint. That is correct. And what we were arguing in reliance upon the totality of the complaint was that the allegations and the attachments which further set out the position of American independence should be construed in favor of the nonmoving party at this initial pleading stage of the case. If we construe this late filed motion as a Rule 60 motion, do we have to find that it was an abuse of discretion for the trial court to not find that argument in the attachment before he dismissed the complaint? I don't believe that this Court needs to go that far. This Court, yes, does need to find there is an abuse of discretion, which can include an error of law. And in this case, there is a significant error of law in that the Court misapplied the standard to be for measurement of the allegations in the complaint. The complaint did allege intertwined economic and environmental interests. The Court construed the complaint to say, well, those are all purely economic, and so there are no environmental interests. The Court also construed the complaint to assert that there would be damage resulting from plaintiff's activities. These might have been appropriate after an evidentiary hearing. They certainly are not appropriate and are a serious error of law at the pleading stage of a case. In response to Judge Goodwin's question, forgive me, the matter involving Valley County is before the district court. It has been argued on cross motions for summary judgment. I don't know when an answer will be forthcoming. Does the Court have any questions? Very well. Thank you very much. Thank you very much. The Court will reassemble tomorrow morning at 9 o'clock.
judges: Goodwin, Pregerson, Christen